Day, J.
The account on which the suit is brought consists of items' running from the year 1849 to 1862. The questions in the case principally relied on ai’e made on the rule adopted in the charge to the jury in regard to the statute *458 of limitations. The charge is based upon the theory, that each new item in an open mutual account takes the items preceding it out of the statute of limitations. The correctness of this theory depends on the construction to be given to two of our statutes of limitations, one of which was in force at the commencement of the account, and the other took effect July 1st, 1853.
It is provided by statute in some of the States, that in actions for the balance due on open, mutual, and reciprocal accounts, the statute of limitations shall begin to run at the date of the last item on either side. We have no such statute in this State. All actions, by our statute, are limited to a specified period “ after the cause of action shall have accrued,” except “ where, in special cases, a different limitation is prescribed.”
The right of action accrues, and the statute, therefore, begins to run, on each item of an account, from the day of its proper date; that is, from the day of the delivery of the article, or work done ; and the action will be barred in six years, unless it is taken out of the statute on some special ground. Mutual and reciprocal accounts between parties have been distinguished from those that are all on one side; and, for a special reason, they have been made, in some measure, an exception to the general rule.
In some of the States, by virtue of special provisions of their statutes, and in others following the English courts in their construction of the statute of James I., it has been held that each new item of a mutual account draws after it the preceding items, and that if the last item is within six years, the whole account is taken out of the statute. This ruling is based on the idea, that each new item in an open mutual account evinces an implied acknowledgment of a balance due on the account, and of a promise to pay it, thereby saving the whole account from the statutory bar. This was, doubtless, the old rule in this State, but it has- been materially modified and changed by statutory provisions. '
Much the larger amount of the account in suit in this case arose, and the right of action thereon therefore accrued. *459 before July 1st, 1853, when the statute of limitations now in force went into effect. It is provided by this statute that all cases, where the right of action had “ already accrued,” shall be controlled by the statute then in force. The statute of 1831 was then in force, and is, therefore, applicable to all that portion of the account. This statute limited actions on contracts, not in writing, to six years; but the fifth section provides as follows: “ That all actions founded upon contracts, either express or implied, where any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, within the time herein-limited, such action may be commenced within the time hereinbefore limited after such payment, acknowledgment, or promise.” 3 Chase’s Stat. 1769.
If it be assumed that each new item in the account implied “ an acknowledgment of an existing liability ” on the preceding account, still the implication is so far limited by this section, that it could be made upon the items only that were “ within ” six years from the date of such new item. Hill v. Henry, 17 Ohio, 9. Moreover, by the express language of the section, the items thus taken out of the statutory bar are saved from the time of such acknowledgment for the period only to which the action is limited, and then the bar becomes absolute; therefore, no acknowledgment, under this section, will save any item of an account from the statutory bar more than twelve years from the time the right of action thereon first accrued. At most, after that, it can only become a consideration for a new promise, which may afford a good ground of action.
Assuming, then, that the restrictions of the code limitations had no effect on any part of the account, and that the act of 1831 was alone applicable to it, still the court erred in not confining its instructions to the jury within the restrictions of the statute of 1831; for under the charge as given, a recovery might be had on that part of the account which had run more than twelve years before the action was brought. This was material to the lights of the defendants below, for *460 much the largest amount of the account had run more than fifteen years. Indeed, the whole of the account previous to July 1st, 1853, was barred by the act of 1831; for the last item, as appears by the record, was dated December, 1852; and the last item within six years after that time is dated September, 1858, which is more than six years before the suit was brought.
That part of the account which arose since July 1st, 1853 comes under the limitation provided in the code of civil procedure. Actions on contracts not in wilting are limited thereby to six years ; but the 24th section is as follows:
“ In any case founded on contract, where any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt, or claim, or any promise-to pay the same, shall have been made, an action may be brought on such case within the period prescribed for the same, after such payment, acknowledgment, or promise, but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.”
Unlike the fifth section of the act of 1831, this section does not prescribe the period within which a payment, acknowledgment, or promise must be made, to avoid the bar; but it does provide that such’ acknowledgment or promise, to have that effect, must be “ in writing, signed by the party to be charged thereby.” . '
The English courts, regarding the bar imposed by the statute of James as being based on the presumption of payment, held that new items of a mutual account between parties rebutted such presumption, and are evidence of an acknowledgment of such an open and unsettled account between them, and of a promise to pay the balance, as will take the case out of the statute. Catling v. Skoulding, 6 Durnf. & East, 189.
This ruling has been followed in many of the States having statutes of limitations similar to that of James. But the soundness of the theory on which the ruling is based, as well as the correctness of the rule, have been much questioned (Tanner v. Stuart, 6 Barn. & Cress. 603; Bell v. Morrison, *461 1 Peters, 351), and, in some, other States they have been repudiated. Blair v. Drew, 6 N. H. 235; Smith v. Dawson, 10 B. Mon. 112; Craighead v. The Bank, 7 Yerger, 399; Lowe v. Dowbarn, 26 Texas, 507.
In England the ruling was abrogated by lord Tenterden’s act (9 Geo. 4), which contains provisions like those of the 24th section of our code.
Since the passage of that act it has been held there, that “ the existence of items, within six years, in an open account, will not operate to take the previous portion of the account out of the statute of limitations” [Cottam v. Partridge, 4 Man. & Gra. 271]; “ but that there must be a part payment in cash, or what is equivalent to it, to have that effect.” Williams v. Griffiths, 2 Crompt. Mees. & Rosc. 45.
It is now regarded to be well established in England, that “no mutual and reciprocal, or cross-accounts, as such, are of any avail (unless in writing and signed by the party charged) to save the statute, either on the ground of their being an acknowledgment of the debt, or as amounting to evidence (by way of admission) of part payment.” Ang. on Lim., sec. 2Y4.
•The language of our code is too clear and explicit to permit any mvplied promise or acknowledgment to save items of more than six years standing from the statutory bar. Nothing short of an acknowledgment of an existing liability, or a promise of payment, “ in writing, signed by the party to be charged thereby,” or of a payment on the account, will have that effect. Such are the express provisions of the statute now in force. Bxjpressio v/ni/as est exelusio alterius. The code modification of the ancient rule was not regarded in the charge of the court, and for this further reason it was, in regard to the account arising since the code came into operation, erroneous.
The record expressly shows that there was no evidence of any playment on the account within six years before the suit was brought; therefore, no question is made, and we give no opinion, as to the effect of part payment of an account, further than to say, if there be no payment within six years, as in this case, the account will not on that ground be taken out of the statutory bar.
*462 The conclusion, then, follows, that the judgment of the common pleas must be reversed, and the cause remanded for further proceedings.
Bbinkeehofe, C.J., and Soott, Welch, and White, J'J. concurred.